Defendant-appellant Lucius Rowser appeals his conviction and sentence from the Stark County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On July 30, 1997, appellant was indicted by the Stark County Grand Jury on one count of kidnapping in violation of R.C.2905.01, one count of felonious assault in violation of R.C.2903.11 and one count of failure to comply with order or signal of a police officer in violation of R.C. 2921.331. With respect to the counts of kidnapping and felonious assault, the indictment alleged that appellant had restrained and physically assaulted Jennifer Stamoules, his girlfriend, as a continuous course of conduct from on or about June 1, 1997, to on or about June 6, 1997.
Appellant, at his arraignment, entered a plea of not guilty to all charges. Subsequently, a jury trial commenced on September 2, 1997. The following evidence was adduced at trial.
Jennifer Stamoules met the appellant in early 1996. The two lived together at an address on Broad Avenue from early 1997 to sometime in May of 1997.
On June 1, 1997, appellant and Stamoules moved into a new apartment together. Appellant, Stamoules testified, had become increasingly jealous, accusing her of having affairs with co-workers and neighbors. As of June 1, 1997, and continuing through June 6, 1997, appellant started barricading the door to their apartment to prevent Stamoules from going out at night. Stamoules was unable to leave once appellant fell asleep because he would wake up as soon as she got up to go out. Stamoules also was afraid to even attempt leaving the apartment because appellant usually kept a knife beside the bed.
Stamoules testified that at one point during the same period of time, she let appellant tape her arms and legs together since "[t]here was no sense in me fighting him because there is no way I could have won a fight against him." Transcript of Proceedings, at 89. During the same period, appellant also threatened to kill Stamoules and physically assaulted her.
While she was not permitted to leave the apartment at night, Stamoules went to the park or the library with appellant during the day. To prevent Stamoules from escaping, appellant sometimes carried a knife and/or threatened her with physical harm.
Sometime between June 1 and June 6, 1997, appellant, who had been drinking with Stamoules, struck her in the head with a twelve or fourteen inch metal skillet while she was sitting at the kitchen table. After heating the skillet up, appellant then proceeded to burn her on the top of her leg and on her buttocks. The same evening, appellant pulled Stamoules' hair out, leaving a bald spot, stabbed her in the knee with a knife, beat her, and choked her until she passed out. Stamoules testified that appellant "said that he stopped choking me because he heard my neck crack and he was afraid that he broke my neck." Transcript of Proceedings, at 95. As a result of appellant's action, Stamoules had a broken nose, bruises over her entire body, two black eyes, three fractured ribs, burn marks, and a broken foot. She also had a scar on her knee from the knife wound.
Stamoules, on June 6, 1997, was finally able to escape when appellant left her at a laundromat to go to an ex-girlfriend's house in order to obtain money for crack cocaine. Stamoules subsequently ended up at the Alliance Women's Shelter from where she was taken to Alliance Community Hospital. Charlotte Arbogast, the assistant director of the Alliance shelter, testified that Stamoules had extensive injuries when she arrived at the shelter. Arbogast stated that she took numerous photographs of Stamoules' injuries.
On September 2, 1997, after concluding their deliberations, the jury found appellant guilty of one count each of kidnapping and felonious assault. Thereafter, after the trial court merged the count of felonious assault into the count of kidnapping, appellant was sentenced to a prison term of five (5) years for kidnapping. Appellant had, the same day, pleaded guilty to the charge of failure to comply with order or signal of police officer and was sentenced to twelve (12) months in prison on such charge. The twelve (12) month sentence was to be served concurrent with the sentence for kidnapping. Judgment Entries memorializing appellant's sentence were filed on September 5, 1997.
It is from the September 5, 1997, Judgment Entry imposing a five (5) year sentence for kidnapping that appellant prosecutes this appeal, raising the following assignment of error:
 THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
Appellant, in his single assignment of error, argues that the jury's verdict was against the manifest weight of the evidence. Appellant specifically contends that Stamoules' version of events was implausible.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v.Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v. Martin
(1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
With respect to the charge of felonious assault, appellant argues that the victim's medical records showed no evidence of any stab or burn wounds. R.C. 2903.11(A)(1) and (2) define felonious assault as knowingly causing serious physical harm to another or to another's unborn or as knowingly causing or attempting to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance. A "deadly weapon" is defined in R.C. 2923.11(A) as "any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon."
Clearly, the knife with an 8 to 10 inch blade which was used by appellant to stab Stamoules in the knee and/or the 12 to 14 inch metal skillet used by the appellant to strike Stamoules in the head, meet the statutory definition of deadly weapons since they were capable of inflicting death and were used as weapons by appellant. See State v. Hiles (June 24, 1996), Delaware App. No. 96CA02009, unreported.
While appellant argues that there was insufficient evidence establishing that Stamoules suffered serious physical harm, the court does not agree. R.C. 2901.01(A)(5) defines serious physical harm as meaning any of the following:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 (b) Any physical harm that carries a substantial risk of death
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain.
Stamoules, at trial, testified that, as a result of the assault, she suffered a broken nose, broken foot[1], fractured ribs, black eyes, a stab wound and bruises. She also was choked to the point of unconsciousness. Such injuries were corroborated not only by Stamoules' testimony and her still visible marks, but by that of the director of the Alliance Women's Shelter and the photographs that she took depicting Stamoules' visible injuries. Clearly, Stamoules suffered at least, temporary serious disfigurement. Moreover, the medical records admitted into evidence confirmed that Stamoules' ribs had been fractured. Stamoules suffered pain from the broken nose and the fractured ribs and the jury could reasonably find beyond a reasonable doubt that Stamoules had physical harm that involved acute pain of such duration as to result in substantial suffering. Thus, there was sufficient credible evidence supporting the jury's finding that appellant was guilty of felonious assault by knowingly causing serious physical harm to Stamoules or by knowingly causing or attempting to cause physical harm to Stamoules by a deadly weapon.
Appellant further contends, with respect to the kidnapping charge, that the jury's verdict was against the manifest weight of the evidence. Appellant specifically points out that Stamoules testified at trial that she left home frequently to go to the library, restaurants, and the gas station, that she had contact during the relevant period of time with a variety of persons, and that, despite having the opportunity to do so, Stamoules failed to report her abuse to the police or to anyone else.
R.C. 2905.01(A)(3) defines kidnapping, in part, as using force, threat, or deception to restrain the liberty of another person for the purpose of terrorizing or inflicting serious physical harm on the victim or another. At trial, Stamoules testified that appellant barricaded her in their apartment every night during the period from June 1 to June 6, 1997, and that, during such period, appellant beat her with a frying pan, burned and stabbed her in order to detain her in the apartment. When she was permitted to leave the apartment during the day either with appellant or alone, appellant either kept a knife nearby and/or threatened Stamoules with physical harm if she told anyone of the abuse or if she left. There was sufficient competent, credible evidence for the jury, which had the opportunity to assess Stamoules' credibility, to find that appellant, through either force or threats of force, restrained Stamoules' liberty with the purpose of terrorizing her or inflicting serious physical harm on her.
We have reviewed the record and we find that the jury's verdict is supported by the manifest weight of the evidence, such that the jury could reasonably conclude the State had met its burden of proof on each essential element of the crimes charged. There is no indication that the jury lost its way.
Appellant's sole assignment of error is overruled.
The judgment of the Stark County Court of Common Pleas is affirmed.
By Edwards, J., Hoffman, P.J. and Farmer, J. concur
--------------------
--------------------
--------------------
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellant.
--------------------
--------------------
 -------------------- JUDGES
[1] Stamoules admitted during cross-examination (Transcript of proceedings at pg. 125) that the foot injury actually occurred at the hands of appellant prior to June 1, 1997, but was not treated until Stamoules reported the other injuries. Stamoules was in a foot cast for about a month. (Transcript of proceedings at pg. 99). Even disregarding this injury, there was sufficient credible evidence to support the jury's finding beyond a reasonable doubt that appellant committed felonious assault.